UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

AMERICAN CIVIL LIBERTIES UNION,  :
AMERICAN CIVIL LIBERTIES UNION   :     10 Civ. 4419 (RJS)
FOUNDATION,                       :     ECF CASE
                                  :
            Plaintiffs,           :
                                  :
      - v -                       :
                                  :
OFFICE OF THE DIRECTOR OF NATIONAL :
INTELLIGENCE, DEPARTMENT OF       :
JUSTICE, NATIONAL SECURITY        :
AGENCY/CENTRAL SECURITY SERVICE,  :
DEPARTMENT OF DEFENSE,            :
                                  :
            Defendants.           :

------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
Robert D. Balin (-5847)
Ronald G. London
1633 Broadway, 27th Floor
New York, NY 10019
(212) 489-8230
robertbalin@dwt.com

- and -

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Jameel Jaffer
Alexander Abdo
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-549-2500
Fax: 212-549-2654

*Co-counsel for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 2

PROCEDURAL HISTORY ....................................................................................... 6

ARGUMENT ........................................................................................................... 8

I.    DEFENDANTS' *VAUGHN* AFFIDAVITS ARE NOT SUFFICIENTLY
      DETAILED ...................................................................................................... 10

II.   INVOCATION OF EXEMPTIONS 1, 3, AND 7E IS ESPECIALLY
      IMPROPER FOR RECORDS DETAILING ABUSES OF THE FAA ........................... 19

III.  EXEMPTION 5 CLAIMS RUN COUNTER TO THE PARTIES' STIPULATION ......... 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*A. Michael's Piano v. FTC,*
    18 F.3d 138 (2d Cir. 1994) ..........................................................................................13

*ACLU v. DOD,*
    752 F. Supp. 2d 361 (S.D.N.Y. 2010) ........................................................................10

*ACLU v. DOJ,*
    265 F. Supp. 2d 20 (D.D.C. 2003) ..............................................................................12

*Associated Press v. DOD,*
    554 F.3d 274 (2d Cir. 2009) ..........................................................................................9

*Bay Area Lawyers for Nuclear Arms Control v. Department of State,*
    818 F. Supp. 1291 (N.D. Cal. 1992) ............................................................ 11, 12, 14, 19

*Campbell v. DOJ,*
    164 F.3d 20 (D.C. Cir. 1998)........................................................................10, 14, 16, 17, 24

*CIA v. Sims,*
    471 U.S. 159 (1985) ....................................................................................................23

*Defenders of Wildlife v. USDA,*
    311 F. Supp. 2d 44 (D.D.C. 2004) ..............................................................................17

*Department of Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001)...........................................................................................................9

*Donovan v. FBI,*
    806 F.2d 55 (2d Cir. 1986) ..........................................................................................18

*El Badrawi v. Department of Homeland Security,*
    583 F. Supp. 2d 285 (D. Conn. 2008) ................................................................... 10, 16

*EPIC v. DOJ,*
    584 F. Supp. 2d 65 (D.D.C. 2008) ......................................................................... 18, 19

*Federal Labor Relations Auth. v. Department of Veterans Affairs,*
    958 F.2d 503 (2d Cir. 1992) ..........................................................................................8

*Grand Cent. P'ship, Inc. v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999) ..........................................................................................9

*Greenberg v. Department of Treasury,*
    10 F. Supp. 2d 3 (D.D.C. 1998).....................................................................................12

*Halpern v. FBI,*
    181 F.3d 279 (2d Cir. 1999) ......................................................................*passim*

*Hayden v. NSA,*
    608 F.2d 1381 (D.C. Cir. 1979) ...............................................................15

*Islamic Shura Council of S. Cal. v. FBI,*
    2011 WL 1576476 (C.D. Cal. Apr. 27, 2011) .....................................19

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989) .....................................................................................9

*Judicial Watch, Inc. v. U.S. Dep't of Commerce,*
    337 F. Supp. 2d 146 (D.D.C. 2004) ........................................................24

*Kanter v. IRS,*
    433 F. Supp. 812 (N.D. Ill. 1977) ..............................................................2

*King v. DOJ,*
    830 F.2d 210 (D.C. Cir. 1987) ................................................................10

*Larson v. Department of State,*
    565 F.3d 857 (D.C. Cir. 2009) ................................................................22

*Maynard v. CIA,*
    986 F.2d 547 (1st Cir. 1993) ...................................................................23

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ................................................................18

*Military Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) ................................................................23

*Mobil Oil Corp. v. Department of Energy,*
    102 F.R.D. 1 (N.D.N.Y. 1983) ................................................................18

*Shannahan v. IRS,*
    2009 WL 4051078 (W.D. Wash. Sept. 3, 2009) .................................17

*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007) ..............................................................18

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) ...........................................................7, 17

*Weissman v. CIA,*
    565 F.2d 692 (D.C. Cir. 1977) ....................................................2, 23, 24

*Wiener v. FBI*,
 943 F.2d 972 (9th Cir. 1991) ......................................................................... 10

*Wilner v. NSA*,
 592 F.3d 60 (2d Cir. 2009) ........................................................................... 10


**STATUTES**

5 U.S.C. § 552 .................................................................................................. 1

5 U.S.C. § 552(a)(4)(B) ................................................................................... 9

5 U.S.C. § 552(b) ........................................................................................... 18

5 U.S.C. § 552(b)(1) ...................................................................................... 23

18 U.S.C. § 798 ............................................................................................. 21

50 U.S.C. § 403-1(i) ................................................................................. 11, 21

50 U.S.C. § 1801 *et seq.* ................................................................................. 1

50 U.S.C.§ 1801(f) .......................................................................................... 3

50 U.S.C.§ 1801(h) ......................................................................................... 3

50 U.S.C. § 1803 ............................................................................................. 3

50 U.S.C. § 1804 ............................................................................................. 3

50 U.S.C.§ 1804(a)(1)-(9) ............................................................................... 3

50 U.S.C.§ 1804(a)(6)(A) ............................................................................... 3

50 U.S.C.§ 1805(c)(1) ..................................................................................... 3

50 U.S.C.§ 1805(c)(2)(A) ............................................................................... 3

50 U.S.C. § 1881 *et seq.* ................................................................................. 1

50 U.S.C. § 1881a ........................................................................................... 4

50 U.S.C. § 1881a(a) ...................................................................................... 5

50 U.S.C. § 1881a(b) ................................................................................... 4, 20

50 U.S.C. § 1881a(i)(2) .................................................................................. 5

50 U.S.C. § 1881a(i)(3)(A) .......................................................................................... 5

50 U.S.C. § 1881a(g)(2)(A)(i) .................................................................................... 4

50 U.S.C. § 1881a(g)(2)(A)(ii) ................................................................................... 4

50 U.S.C. § 1881a(g)(2)(A)(v) ................................................................................... 4

50 U.S.C. § 1881a(g)(2)(A)(vi) .................................................................................. 4

50 U.S.C. § 1881a(g)(2)(A)(vii) ................................................................................. 4

50 U.S.C. § 1881a(g)(4) ............................................................................................... 5

50 U.S.C. § 1881a(*l*)(1) ............................................................................................... 5

50 U.S.C. § 1881a(*l*)(3)(A) .......................................................................................... 5

50 U.S.C. § 1881a(*l*)(3)(A)-(C) .................................................................................. 5

FISA Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2435 (2008) ........................ 1, 6

Pub. L. No. 86-36, 50 U.S.C. § 402 note ................................................................. 21

## LEGISLATIVE MATERIALS

154 Cong. Rec. S227 (daily ed. Jan. 24, 2008) .................................................... 4

S.149, 112th Cong. (2011) ....................................................................................... 6

S.193, 112th Cong. (2011) ....................................................................................... 6

S.289, 112th Cong. (2011) ....................................................................................... 6

S. Rep. No. 95-604(I) (1977), *reprinted in* 1978 U.S.C.C.A.N. 3904 .......................... 3

## OTHER AUTHORITIES

Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ........................ 11, 12, 21, 22, 23, 24

*Freedom of Information Act*,
   Memorandum for the Heads of Executive Departments and Agencies,
   74 Fed. Reg. 4683 (2009) ..................................................................................... 23

NEWSPAPERS

Eric Lichtblau & James Risen, *Officials Say U.S. Wiretaps Exceeded Law*,
N.Y. Times, Apr. 15, 2009 ....................................................................................1

James Risen & Eric Lichtblau, *Email Surveillance Renews Concerns in Congress*,
N.Y. Times, June 16, 2009 ..................................................................................1

Editorial, *Major Technical Difficulties*, N.Y. Times, Nov. 2, 2010 .............................................5

## PRELIMINARY STATEMENT

This litigation concerns a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for records relating to the government's interpretation, implementation, and abuse of authority under the FISA Amendments Act of 2008.[1] The request seeks to shed light on the expansive authority the FAA confers to allow dragnet surveillance of Americans' international communications,[2] and on repeated abuses of that authority reported by the media.[3] In November 2010, the government released 456 pages of heavily redacted documents in response to the request. Those documents confirm both that the government broadly interprets its surveillance authority under the FAA, and that it repeatedly has violated even the lax limits imposed by the FAA. Nevertheless, the American public remains largely in the dark about the FAA's reach, and the government continues to withhold critical information responsive to Plaintiffs' request, including information and statistics relating to abuse of the FAA. That information is critical to the American public now, as its elected officials debate whether to allow the FAA to expire on December 31, 2012. *See* Pub. L. No. 110-261, § 403(b)(1), 122 Stat. 2435 (2008).

Despite the manifest public importance of the withheld information, the government has failed to adequately justify its withholdings, and has improperly withheld critical information relating to abuse of the FAA. First, the defendant federal agencies[4] have attempted to justify

---

[1] Pub. L. No. 110-261, codified at 50 U.S.C. § 1881 *et seq.* ("FAA"), amending the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1801 *et seq.* ("FISA").

[2] Communications are referred to here as "international" if they either originate or terminate (but not both) outside the United States.

[3] *See, e.g.*, Eric Lichtblau & James Risen, *Officials Say U.S. Wiretaps Exceeded Law*, N.Y. Times, Apr. 15, 2009 (characterizing NSA's "'overcollection' of domestic communications of Americans" as "significant and systemic"); James Risen & Eric Lichtblau, *Email Surveillance Renews Concerns in Congress*, N.Y. Times, June 16, 2009.

[4] Defendants are the Office of Director of National Intelligence ("ODNI"); the Department of Justice ("DOJ"), including its National Security Division ("NSD"), Office of Legal Counsel

their extensive withholdings and redactions with only conclusory, boilerplate explanations. Under settled law, this is not sufficient.  Before records can be withheld under the FOIA, agencies must explain the nature and content of the records with reasonable specificity as well as the basis for withholding.  This the government has not done.

Second, the agencies improperly withheld information and statistics relating to abuses of FAA authority, including the improper acquisition, retention, or dissemination of Americans' communications.  The documents released call such abuses "compliance incidents," and provide limited information about them, yet the government appears to have withheld the vast majority of information related to those incidents, including several reports describing them extensively. Those withholdings, under Exemptions 1, 3, and 7E, are improper.  Activities prohibited by the FAA may not be withheld as "intelligence sources or methods" under Exemption 1 or 3, or as law-enforcement "techniques and procedures" under Exemption 7E.  *See*, *e.g.*, *Weissman v. CIA*, 565 F.2d 692, 695-96 (D.C. Cir. 1977); *Kanter v. IRS*, 433 F. Supp. 812, 822 (N.D. Ill. 1977).

For these reasons, the Court should grant Plaintiffs' motion for summary judgment and order the government to (1) provide Plaintiffs with *Vaughn* declarations and *Vaughn* indices that describe the withheld records with reasonable specificity and the bases for their withholding, and (2) disclose withheld information relating to the government's abuse of the FAA.

## BACKGROUND

Congress enacted FISA in 1978 partly in response to years of investigation that revealed the executive branch's widespread warrantless surveillance of U.S. citizens – including journalists, activists, and members of Congress – who had engaged in no criminal activity and posed no

---

("OLC"), and Federal Bureau of Investigation ("FBI"); the National Security Agency/Central Security Service ("NSA"); and the Department of Defense ("DOD").

threat to national security. [5]  It created procedures for federal officials to obtain authorization for electronic surveillance for foreign intelligence purposes, including communications between persons in the U.S., as well as between persons in the U.S. and those located outside the U.S. [6]

To obtain such authorization, federal officers apply to a special FISA-created Foreign Intelligence Surveillance Court ("FISC"). [7]  Applications must be approved by the Attorney General ("AG"), identify (or describe) the person to be monitored, and specify grounds for believing the target is a foreign power or agent thereof that is using or about to use the facilities to be surveilled. [8]  They must also propose minimization procedures reasonably designed to limit, among other things, the acquisition, retention, and dissemination of information concerning unconsenting U.S. persons.  *Id.*; *id.* § 1801(h).  To approve an application, a FISC judge must find it meets the above criteria, then enter an individualized order specifying the target's identity, the nature/location of places to be monitored, the type(s) of information sought, the means of surveillance and period for which it is approved, and minimization procedures, compliance with which the FISC may monitor throughout the surveillance.  *Id.* § 1805(c)(1), (2)(A).

The FAA amended FISA in 2008 by significantly relaxing the above process, thereby creating an environment in which prohibited mass acquisitions of U.S. citizens' and residents' international communications can occur.  In some ways, FAA-based mass surveillance orders are like blank checks that, once obtained, allow surveillance under broadly drawn parameters, with-

---

[5]  S. Rep. No. 95-604(I), at 6 (1977), *reprinted at* 1978 U.S.C.C.A.N. 3904, 3909.

[6]  *See* 50 U.S.C. §§ 1801(f), 1804(a)(6)(A).

[7]  *See id.* §§ 1803, 1804.

[8]  Applications must also state the nature of information sought and type of communications or activities to be surveilled, the means by which surveillance will be effected, a description of any previous surveillance applications, and the period during which surveillance was maintained, as well as certify that a significant purpose of the surveillance is to obtain foreign intelligence that could not reasonably be obtained by normal investigative techniques.  *Id.* § 1804(a)(1)-(9).

out further judicial oversight or authorization. In particular, while leaving much of the existing FISA regime intact, FAA § 101(a)(2) added new FISA § 702 (codified at 50 U.S.C. § 1881a) to create procedures for electronic surveillance for foreign intelligence targeting of non-U.S. persons outside the U.S. [9] In contrast to FISA, the FAA does not require individualized FISC applications identifying particular targets or facilities. Instead, the AG and the Director of National Intelligence ("DNI") apply under the FAA for mass surveillance authorizations by filing written certifications with the FISC, supported only by affidavits generally attesting that "a significant purpose of the acquisition is to obtain foreign intelligence." 18 U.S.C. § 1881a(g)(2)(A)(v), (vi).

Certifications under the FAA must attest that the surveillance will comply with statutory limitations, which provide that the government may not intentionally:

> target any person known at the time of acquisition to be located in the U.S.;

> target a person reasonably believed to be located outside the U.S. if the purpose is to target a particular, known person reasonably believed to be in the U.S.;

> target a U.S. person reasonably believed to be located outside the U.S.; or

> acquire any communication as to which the sender and all intended recipients are known at the time of the acquisition to be located in the U.S. [10]

Certifications must also state that adequate targeting and minimization procedures have been approved by the FISC or submitted to it for approval, or are submitted with the certification. *Id.* § 1881a(g)(2)(A)(i), (ii). The FAA does not require, however, any showing that surveillance targets are foreign agents, are engaged in criminal activity, or are connected even remotely with

---

[9]  *See id.* § 1881a. *See also* 154 Cong. Rec. S227, 228 (daily ed. Jan. 24, 2008) ("[A]ctivities authorized by this bill are only directed at persons outside the United States …. For individuals inside the United States, the existing [FISA] procedures … continue to apply.").

[10]  *See* 50 U.S.C. § 1881a(b), (g)(2)(A)(vii). Despite these restrictions, while the FAA bans intentionally targeting persons known at the time of acquisition to be located in the U.S., FAA-authorized acquisitions may haphazardly sweep up international communications of U.S. persons. In that regard, the AG and DNI can authorize mass acquisitions under § 1881a that can involve thousands or even millions of communications even if it is clear that *all* the communications to be acquired may originate or terminate inside the U.S.

terrorism – in fact, it does not require identifying targets at all.  Moreover, it expressly provides that certifications need not identify specific facilities, phone lines, email addresses, premises or property where surveillance will be directed.  *Id.* § 1881a(g)(4).

The FISC reviews only the broad certifications and their targeting and minimization procedures, but if it finds all required elements are included, it issues an order authorizing the requested surveillance.  *Id.* § 1881a(i)(2), (3)(A).  The AG and DNI may thereafter jointly authorize, for a period up to one year, surveillance to target persons reasonably believed to be located outside the U.S. in order to acquire foreign intelligence.  *Id.* § 1881a(a).  In further contrast to the FISA scheme, under the FAA, the FISC may not monitor compliance with targeting and minimization procedures on an ongoing basis.  Instead, that duty falls to the AG and DNI, as well as the heads of the agencies utilizing the FAA, who must periodically review their FAA surveillance, *see id.* § 1881a(*l*)(1), (3)(A), and report how many U.S. persons were overheard or referred to in intercepted communications.  *Id.* § 1881a(*l*)(3)(A)-(C).

The FAA has been a matter of significant public and media interest from before its enactment to the present, insofar as it removes significant constraints against the collection of Americans' international emails and phone calls *en masse*, without a warrant, suspicion of any kind, or any but the most limited judicial oversight. [11]  The FAA also has been criticized on many of the nation's leading editorial pages, and reports of over-collection of U.S. persons' communications in particular have caused great consternation. [12]  In spite of this, and despite the facts that the FAA expires next year and that bills that would extend its expiration date are

---

[11]  *See* Complaint for Injunctive Relief (annexed as Attachment 1 to the accompanying Declaration of Robert D. Balin, dated June 3, 2011 ("Balin Decl.")), Exh. A at 7-10 (describing news coverage and editorials expressing concern over the FAA).  *See also supra* note 3.

[12]  *Id.  See also, e.g.*, Editorial, *Major Technical Difficulties*, N.Y. Times, Nov. 2, 2010.

pending, [13] there is almost no publicly available information about the use of FAA surveillance powers. The government has not publicly disclosed, for example, how it interprets the scope of those powers, how broadly it uses the FAA for dragnet collection and analysis of email, text, and voice traffic or, importantly, the extent to which FAA authority is being used to purposefully and impermissibly monitor U.S. persons.

## PROCEDURAL HISTORY

Concerned that the scarcity of publicly available information about the FAA is hindering informed public debate, on November 19, 2009, Plaintiffs requested under the FOIA that the ODNI, the DOJ (encompassing the NSD, FBI, and OLC), the NSA, and the DOD release records reflecting their interpretation and use of their authority under the FAA, and non-identifying statistical information. *See* Compl. Exh. A. The FOIA request identified for disclosure seven categories of agency records created since July 10, 2008. *See id.* at 3-4.

The chief focus of the FOIA request is statistical in nature: it seeks records indicating the number of FAA applications that have been filed, granted, granted with modification, or rejected, and the number of U.S. persons whose electronic communications have been captured by FAA surveillance. *Id.* at 3. It also seeks records reflecting the agencies' legal interpretations of the scope of their authority under the FAA, and their procedures for minimizing improper surveillance of U.S. persons, as well as reports, assessments, and reviews by the AG, DNI, agency heads, or Inspectors General as mandated by the FAA, and any complaints about, investigations of, and disciplinary actions related to FAA surveillance. *Id.* The FOIA request does **not** seek the content of any FAA surveillance application or any names, or intelligence sources or methods.

---

[13] *See* Pub. L. No. 110-261, § 403(b)(1), *and*, *e.g.*, S.149, S.193, and S.289, 112th Cong. (2011) (each proposing to extend the FAA).

Prior to Plaintiffs' filing of this suit on June 3, 2010, none of the agencies produced any records or provided any substantive response to the FOIA request.  Defendants filed an Answer, and about one week later the parties entered a "So Ordered" Stipulation (Dkt. 12) that clarified and limited the scope of the FOIA request.  The Stipulation also set a deadline for the agencies to process and produce responsive documents, and/or notice of complete or partial withholdings under FOIA exemptions.  In the event of objections, the Stipulation provided the parties would discuss whether, how, and when Defendants would provide an index of partially or completely withheld records under *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973).

On November 29, 2010, the agencies produced some responsive documents (many in heavily redacted form), and on April 25, 2011, ODNI, NSA, NSD and FBI each provided declarations seeking to justify their respective redactions and withholdings of other records. [14] No Defendant produced a *Vaughn* index.  Rather, the declarations and notations on records released (and, in some cases, on "deletion pages" for those withheld) provide the only explanation for why responsive documents or information were not disclosed.

Specifically, ODNI identified 500 pages across nearly 50 different documents as responsive to Plaintiffs' FOIA request, but produced only six documents, totaling 103 pages, which included semi-annual assessments under FAA Section 702 that were heavily redacted under FOIA Exemptions 1 and 3.  Att. 2 ¶ 20.  NSD identified five categories of records comprising over 500 pages responsive to the request, including semi-annual reports and notices and reports

---

[14]   The agencies' declarations and the documents they produced are annexed to the Balin Declaration as Attachment 2 (Declaration of John F. Hackett, ODNI Director of Information Management & pp. ODNI 0001-0103), Attachment 3 (Declaration of Mark A. Bradley for NSD & pp. FAA 656-748), Attachment 4 (Declaration of Diane M. Janosek for NSA & pp. NSA 0001-0074) and Attachment 5 (Declaration of David M. Hardy for FBI, which includes pp. FAA 1-655 at Exhibit D).

to the FISC, but withheld them all in full, claiming FOIA Exemption 1 applies. [15]   NSA iden-

tified 27 responsive documents consisting of 144 pages, nearly half of which it withheld in full

while others were released in heavily redacted form, based on FOIA Exemptions 1 and 3.  Att. 4

¶¶ 12, 14-15.  The FBI, citing FOIA Exemptions 1, 2, 4, 5, 6, and 7, withheld more than 450

pages in full, comprising an indeterminate number of documents, and redacted over 150 pages it

produced.  Att. 5, *passim*.

Although most of the documents are heavily redacted or entirely withheld, they suggest

there has been over-collection under the FAA, though it is difficult to determine how systemic

and/or purposeful it may be.  For example, official reports and assessments that were produced

appear to note acquisitions of U.S. persons, but all data about how many such communications

were intercepted, disseminated, or retained under the FAA have been redacted.  Plaintiffs now

move for summary judgment and an order requiring the agencies to produce *Vaughn* declarations

and indices that adequately describe the withheld information and the bases for withholding, and

an order requiring the agencies to disclose information relating to abuses of the FAA.

## ARGUMENT

Defendants' declarations – which seek to shield essentially all their FAA operations from

public view – are strikingly at odds with the FOIA's overarching intent of being "broadly con-

ceived" to effectuate "a general philosophy of full agency disclosure."  *Federal Labor Relations*

*Auth. v. Department of Veterans Affairs*, 958 F.2d 503, 505, 508 (2d Cir. 1992).  As the Second

Circuit has noted, the FOIA "adopts as its most basic premise a policy strongly favoring [ ]

disclosure of information in the possession of federal agencies," *Halpern v. FBI*, 181 F.3d 279,

286 (2d Cir. 1999), "to promote honest and open government and … an informed citizenry."

---

[15]   Att. 3 ¶ 5.  NSD also relied, *sub silentio*, on Exemptions 3 and 7E.  *See infra* at 13, 21.

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999).  Strictly upholding these precepts is particularly important in a case like this, which concerns records that would shed light on the government's broad interpretation of the FAA and repeated abuse of even the lax limits it imposes.  Exposing those abuses – and the extent to which even lawful FAA surveillance invades Americans' privacy – is "vital to the functioning of a democratic society" and as a "check against corruption [ ] to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

The Court should thus grant summary judgment for Plaintiffs.  The FOIA requires agencies to "disclose records unless [ they] fall within one of the [ ] enumerated exemptions" to disclosure.  *Associated Press v. DOD*, 554 F.3d 274, 283 (2d Cir. 2009) (citation omitted).  In light of this "strong presumption in favor of disclosure," agencies bear the burden to justify withholding any requested material, *id.*, as the FOIA's "limited exceptions" do not vitiate the basic policy that "disclosure, not secrecy, is [its] dominant objective." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  In conducting *de novo* review of Defendants' exemption claims, 5 U.S.C. § 552(a)(4)(B), the Court must construe all exemptions narrowly, "with all doubts resolved in favor of disclosure." *Halpern*, 181 F.3d at 286-87.

Here, the Defendant agencies have not provided sufficiently detailed justifications under Exemptions 1, 3, and 7E for withholding records responsive to Plaintiffs' FOIA request.[16]  In addition, the agencies are improperly withholding information related to abuses of their statutory authority under the FAA.  The Court should grant summary judgment to Plaintiffs with respect to those documents and order them released as expeditiously as possible.

---

[16]  Plaintiffs do not dispute the agencies' withholdings under Exemptions 2, 4, 6, 7C, or 7D, though we note the same lack of detail attends those claims.

## I.   DEFENDANTS' *VAUGHN* AFFIDAVITS ARE NOT SUFFICIENTLY DETAILED

Defendants' withholdings and redactions cannot be sustained because summary judgment in favor of nondisclosure is proper only if agency affidavits "describe the justifications … with reasonably specific detail[ to] demonstrate that the information withheld logically falls within [a] claimed exemption," *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009), which the agencies fail to do here.  Defendants cannot meet this burden with "conclusory" claims or affidavits that merely "recite statutory standards," or are "overly vague or sweeping."  *ACLU v. DOD*, 752 F. Supp. 2d 361, 364 (S.D.N.Y. 2010).  Rather, "when an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating [them] with a particular part of a withheld document."  *El Badrawi v. Department of Homeland Security*, 583 F. Supp. 2d 285, 310 (D. Conn. 2008).

In doing so, agencies "must describe *each* document or portion [ ] withheld, and for *each* withholding … discuss the consequences of disclosing the sought-after information,"[17] offering "as much information as possible without thwarting the claimed exemption's purpose."  *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) (internal quotation marks omitted).  "Even [if] national security [is] implicat[ed]," there must be "sufficient information to review the agency's with-holdings," and "cryptic and indefinite possibilities" do not suffice.[18]  In this respect, a "model" declaration is one that states "in great detail what the document is and how release of the with-held portions would adversely affect the nation," by giving "a brief description of the document"

---

[17]   *King v. DOJ*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (agency has the "burden of demon-strating applicability of the exemptions invoked *as to each document or segment withheld*").

[18]   *El Bardawi*, 583 F. Supp. 2d at 319.  *See also Halpern*, 181 F.3d at 295 (even if national security is involved courts must have sufficient information for *de novo* review of withholdings). Even with classified matters of national defense or foreign policy, "in most cases the agency should not have difficulty describing the context and nature of withheld information without revealing its substance."  *Campbell v. DOJ*, 164 F.3d 20, 31 (D.C. Cir. 1998).

then "discuss[ing the] portions withheld and the … harms that would attend disclosure." *Bay Area Lawyers for Nuclear Arms Control v. Department of State*, 818 F. Supp. 1291, 1297 (N.D. Cal. 1992).  Defendants come nowhere near meeting these standards in this case.

 **ODNI.**  ODNI, for example, attempts to support with a single paragraph in a brief declaration its release of only six documents, totaling 103 heavily redacted pages – out of 500 responsive pages that comprise nearly 50 different documents – claiming that FOIA Exemptions 1 and 3 justify nondisclosure. [19]  This includes three semi-annual assessments under FAA Section 702 that were released with dozens of individual redactions, [20] which are summarily justified by bare statements that the material withheld is "properly classified pursuant to Executive Order 13526," and "protected by the sources and methods provision of the National Security Act."  *Id.* ¶ 23 (citing, respectively, Executive Order 13526, 75 Fed. Reg. 707 (2010); 50 U.S.C. § 403-1(i)).

 "No specifics are given, only boilerplate language … that [material] is exempt," *see Bay Area Lawyers*, 818 F. Supp. 2d at 1299, which offers "no contextual description either of the documents … or the specific redactions," *Halpern*, 181 F.3d at 293, or even mention of the Executive Order provisions that purportedly apply.  Plainly this is not "specific enough to … enable[ ] the court to review … redactions without having to pull the contextual information out of the [ ] documents for itself."  *Id.* at 294.  ODNI thus "completely fails to provide the kind of fact-specific justification that either [ ] would permit [Plaintiffs] to contest the affidavit in adversarial fashion, or … permit a [ ] court to engage in effective *de novo* review."  *Id.* at 293.

---

 [19]  As a threshold matter, the Hackett Declaration states that ODNI referred 46 documents, totaling 396 pages to other agencies for review and does not otherwise defend the withholdings and redactions among them.  Att. 2 ¶ 19.  All ODNI does on this score is generally refer to declarations by "other" agencies for further information on the "classified intelligence sources and methods information contained in these documents."  *Id.* ¶ 23.  As discussed below, those declarations do no better job justifying the withholdings and redactions.

 [20]  *Id.* ¶ 20.  ODNI also redacted the assessments' one-page transmittal letters, under FOIA Exemptions not contested here.  *See supra* note 16.

*NSD.* According to the Bradley Declaration, NSD withheld in full all records responsive to Plaintiffs' request, Att. 3 ¶ 5, involving five different categories of documents comprising over 500 pages, nondisclosure of all of which NSD attempts to justify by 10 scant paragraphs that do little more than recite applicable legal standards. Just two paragraphs are allotted each category, with the first dedicated to describing what part of Executive Order 13526 allegedly applies. The other simply offers variations on claims that disclosure would harm national security, because it would reveal "means by which the Government targets non-United States persons," because disclosure "would provide [ ] adversaries and foreign intelligence targets [ ] insight into [our] foreign intelligence [ ] capabilities," and/or because the information "could be used to develop the means to degrade or evade those collection capabilities." *Id.* ¶¶ 9, 11, 13, 15, 17, 19.

While these statements may not be "literally identical" and therefore "unacceptable," *Bay Area Lawyers*, 818 F. Supp. at 1299, they are pretty close to identical. Further, these conclusory and generalized averments are insufficient for NSD to meet its burden, especially where they "read more like a policy justification" for § 1.4 of Executive Order 13526, and "barely pretend" to apply it to the specific material at hand. *Halpern*, 181 F.3d at 290, 293.

To be sure, NSD cites subparagraphs (c) and (g) of E.O. 13526 § 1.4, which authorize classifying information concerning "intelligence activities (including covert action), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." Att. 3 ¶¶ 8, 10, 12, 14, 16, 18. But in doing so, it fails to explain "both why the material has been kept secret and why such secrecy is allowed by the terms of the [ ] executive order." *ACLU v. DOJ*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003). *See also Greenberg v. Department of Treasury*, 10 F. Supp. 2d 3, 21 (D.D.C. 1998) ("generic categorization without cross-references and infor-

mation about [ ] individual documents [ ] is insufficient to support … withholding").  This is thus a case much like *Halpern*, where the Second Circuit rejected an agency's summary assertions that disclosure of documents withheld under Exemption 1 would "automatically reveal … intelligence-gathering capabilities," and chastised it for failing to provide the "reasonable specificity" to which FOIA plaintiffs and reviewing courts are entitled.  181 F.3d at 293.

In addition, insofar as NSD was referred records from the FBI that were subject to heavy redaction, Att. 3 ¶ 8, it appears to rely on FOIA Exemptions 3 and/or 7E, even though the Bradley Declaration does not even mention them.  Rather, the documents include "Deleted Page Information Sheets" with check-boxes indicating that "[d]eletions were made pursuant to the exemptions indicated … with no segregable material available for release" on the basis of not only FOIA Exemption 1, but 3 and 7E as well.  Without any articulation by NSD of the basis for its withholding under the latter two Exemptions, one can only speculate as to the grounds NSD maintains for asserting them, and the "Information Sheet" checklist certainly does not offer analysis explaining how the redacted material falls within the Exemptions' scope.  *A. Michael's Piano v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994).  This further impedes the Court's contextual analysis necessary for *de novo* review.  *Halpern*, 181 F.3d at 293.

**NSA.**  The Janosek Declaration indicates NSA identified 27 documents consisting of 144 pages responsive to Plaintiffs' FOIA request, nearly half of which NSA withheld in full while the others were released in heavily redacted form in most cases, Att. 4 ¶ 12, with all nondisclosures justified under FOIA Exemptions 1 and 3 via opaque, boilerplate explanations.  NSA lumps together 12 documents withheld in full as "policies, guidance and standard operating procedures" relating to "implementation of the Protect America Act (PAA) and the FAA," without explaining what the documents entail.  It then claims they are "[a]ll … classified TOP SECRET/COMINT

or SECRET/COMINT and thus [ ] exempt" under Exemptions 1 and 3. *Id.* ¶ 15. Similarly, 4 of the 15 partially released documents, comprising 52 heavily redacted pages (half of which are fully blank), consist of a FISA Modernization Exam for an internal NSA course, the transcript of a video on the FAA, FAA Section 702 training materials, and a Section 702 summary. *Id.* ¶ 13. For these, nondisclosure is defended on grounds that the material is "protected [by] Exemptions 1 and 3," as "properly classified [under] E.O. 13526 and/or protected from release by … Public Law 86-36, 50 U.S.C. § 403-1(i) and 18 U.S.C. § 798." *Id.* ¶ 14. This is followed by a blanket assertion simply stating that the "material withheld provides extensive insight into NSA's collection, analysis, and reporting methods and structures." [21]

Such "explanations" are, as above, mere "boilerplate language and [ ] conclusion[s]," *Bay Area Lawyers*, 818 F. Supp. 2d at 1299, lacking "contextual description [ ] of the documents … or of the specific redactions." *Halpern*, 181 F.3d at 293. For example, while NSA summarizes the types of information Plaintiffs' FOIA request sought, and claims disclosure of some information might harm national security, it never connects those claims to examples of actual material that it withheld. It thus "fails to draw any connection between the documents … and the general standards that govern the national security exemption." *Campbell v. DOJ*, 164 F.3d at 31.

Its Exemption 3 justification is equally opaque. Just a fragment of one sentence out of six paragraphs – stating merely that "I have determined that the NSA's SIGINT activities and functions and its intelligence sources and methods would be revealed if any of the withheld information about NSA's collection under the FAA are disclosed" – even attempts to connect otherwise *pro forma* recitation of purportedly applicable statutes and case law to records at issue.

---

[21] *Id.* The remaining 11 partially released records are virtually identical 2-page letters from NSA's Inspector General to various Executive and Legislative Branch officials, conveying assessments of NSA's compliance with FAA procedures for targeting non-U.S. persons, with almost everything but introductory paragraphs withheld. *Id.* We address these *infra* at Point II.

Att. 4 ¶ 30.  This language is nearly identical to the initially unacceptable affidavit in *Hayden* v.

*NSA*, where the court deemed NSA's FOIA Exemption claims "insufficiently detailed" to satisfy

*Vaughn*.  608 F.2d 1381, 1383 (D.C. Cir. 1979).  In that case, NSA's affidavit was acceptable

only after it "described the intelligence activity involved, and [showed] why disclosure … could

reveal the nature of that activity," by "stat[ing] as much detail … as it reasonably could without

revealing sensitive information." *Id.* at 1391.  As the D.C. Circuit held, "this is the proper way to

satisfy FOIA Exemption 3," *id.*, and as to both that Exemption and Exemption 1, the Janosek

Declaration is a far cry from providing the necessary level of detail.

  **FBI.**  The Hardy Declaration offered by the FBI addresses over 450 pages withheld in

full, comprising an indeterminate number of documents, [22] and over 150 redacted pages, nondis-

closure of the sum of which is justified under Exemptions 1 and 7E. [23]  Yet the FBI's explana-

tions encompass just a few short paragraphs in a nearly 50-page declaration, [24] making this truly

a case where "[a]lthough the author … wrote much, [ ]he said little; and … nothing in particular

that would justify withholding." *Halpern*, 181 F.3d at 285.  In most cases, documents withheld

or redacted are not described, nor is any serious effort made to match explanations for withhold-

ing or redacting to specific documents, or parts of them. [25]  Plus, the (redacted) pages produced

to Plaintiffs fail for the most part to either suggest what the documents are or, where one might

---

[22]  In addition, at least a few pages, including FAA 194, 234, 274, 314, 355, and 437, are
withheld effectively in full, without any specific FOIA Exemption assigned to them. *See* Att. 5
¶¶  39, 44, 49, 52, 61, 62, 66, 70, nn.22-25, 28-30, 32.

[23]  As noted above, Plaintiffs are not contesting claims under Exemptions other than 1, 3, 5
& 7E, *see supra* note 16, and the FBI does not rely on FOIA Exemption 3 for its nondisclosures.

[24]  *See* Att. 5 ¶¶ 39-41, 43-44 & 45-46, 69-70.

[25]  Considering some of the redactions are as granular as omitting specific bullet points on a
slide, *see*, *e.g.*, FAA 31, 35-39, 44, 50, 53, 56, 61-62, 65-70, the highly general way in which
withholdings/redactions are justified is impossible to square with specific material not disclosed.

guess their nature, offer insight how the claimed Exemptions apply.[26] Even with the Exemption notations on redacted records and "deletion pages" listing Exemptions asserted, this cannot meet the FBI's burden to show the Exemptions apply, as it facilitates neither contesting the declaration in "adversarial fashion," nor *de novo* review by the Court. *El Badrawi*, 583 F. Supp. 2d at 312.

For example, the FBI offers a long list of items as to which it asserts "information pertaining to [ ] persons outside the [U.S.] other than [U.S.] persons, acquisition training, retention, analyzation, and dissemination … is withheld to protect intelligence methods" and/or "actual intelligence activities and methods … or … intelligence gathering capabilities." Att. 5 ¶¶ 39-40 & n.22. But there is no explanation *what* the listed documents are, *why* they reflect intelligence "methods," "activities," and/or "capabilities," or *how* disclosure of material withheld can cause the asserted harms of "allow[ing] hostile entities to discover the [ ] methods and activities," or of "reveal[ing] current specific targets of … national security investigations" or "criteria used and priorities assigned to … investigations."[27] The FBI thus fails to "elaborate on the reasons for the redactions with sufficient specificity," *Halpern*, 181 F.3d at 287, but instead offers "mere[ ] categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure." *Campbell v. DOJ*, 164 F.3d at 30 (internal quotation omitted).

---

[26] Even as to redactions, and even if it is clear a document may be a slide deck or flip-book, memorandum of understanding, computerized file of some kind, etc., it cannot be inferred from surrounding content what the redactions cover, or how they satisfy any FOIA Exemption. Examples may be found at FAA 79-88, 96, 194, 234, 274, 314, 355, 396, 437, 480, 523, 526-27, 531-32, 544, 550, 555-63, 572-77, 584-89, 591-602, 607, 626-29, 632-34, and 636-40.

[27] *Id*. ¶ 41. To the extent the FBI's assertion of "Exemption (b)(1)-2" applies only to file numbers, Plaintiffs view them as outside the scope of the FOIA request as narrowed by the Stipulation. That said, because many assertions of Exemption (b)(1)-2 are for documents withheld in full rather than merely redacted, Plaintiffs cannot confirm this designation does, in fact, pertain solely to file numbers, though the few cases where it appears in redactions suggest this is so. The FBI should confirm, however, that this is true for the fully withheld pages as well.

As to Exemption 7E, the Hardy Declaration at least identifies records withheld or redact-ed as internal e-mails, training slides, legal opinions and interpretations of techniques, Standard Operating Procedures, communications concerning investigations, case write-ups, and "miscel-laneous reports," though it does not specify which are which in the long list of pages to which this description applies. *Id.* ¶¶ 69 & 70 n.32. Worse, the only explanation for how Exemption 7E applies is that "details could enable targets … to avoid detection or develop countermeasures to circumvent" FBI efforts. *Id.* ¶ 69. This is no more than a "boilerplate rationale[ ] in support of withholding" that cannot meet the FBI's burden. *Shannahan v. IRS*, 2009 WL 4051078, at *8 (W.D. Wash. Sept. 3, 2009). While an agency's invocation of Exemption 7 is entitled to defer-ence, such "review is not vacuous," *Campbell v. DOJ*, 164 F.3d at 32, and "blind deference is precisely what Congress rejected" with respect to the FOIA. *Halpern*, 191 F.3d at 293.

***Lack of* Vaughn *Indices*.** The declarations' shortcomings are exacerbated by the fact that no *Vaughn* index was provided by any Defendant. Part of an agency's burden in claiming that a FOIA Exemption applies is submitting documentation that provides an "indexing system that [ ] subdivide[s] the [material] withheld … into manageable parts cross-referenced to the relevant portion of the [ ] justification" for withholding. [28] A declaration generally may serve as an acceptable *Vaughn* index, as the substance, not the form, of an Exemption claim is paramount – but only if it contains adequate substance to determine whether the agency has properly with-held. *Defenders of Wildlife v. USDA*, 311 F. Supp. 2d 44, 58 (D.D.C. 2004). The government

---

[28] *Halpern*, 181 F.3d at 289 (quoting *Vaughn*, 484 F.2d at 826-27) (internal quotations omitted, editing supplied).

largely fails to provide that here.  Before any disputed withholdings can be sustained, the Court

should require the preparation and submission of proper *Vaughn* indices. [29]

*Segregability*.  The same failings of lack of detail and explanation that fatally undermine

the invocation of FOIA exemptions to defend withholdings and redactions also preclude the

agencies from satisfying their burden on segregability.  The FOIA requires any reasonably seg-

regable portion of a record to be provided after deletion of portions which are exempt.  5 U.S.C.

§ 552(b).  This is true under all exemptions, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106,

1116 (D.C. Cir. 2007), and agencies therefore must "segregate [ ] disclosable and non-disclos-

able portions" in responsive records.  *Donovan v. FBI*, 806 F.2d 55, 58 (2d Cir. 1986).  There-

after, "nonexempt factual information contained in an otherwise protected record must be

disclosed unless it is inextricably intertwined or otherwise cannot be segregated" from exempt

material.  *EPIC v. DOJ*, 584 F. Supp. 2d 65, 72 (D.D.C. 2008) (internal quotation omitted).  An

agency claiming non-exempt information is not segregable and disclosable bears the burden of

establishing that is the case, [30] and segregability claims that are "too vague and general to be

useful" do not satisfy that burden.  *EPIC v. DOJ*, 584 F. Supp. 2d at 72.

Here, ODNI does not even mention segregability, and the other agencies each offer but a

single sentence no matter how many documents, withholdings, and/or redactions a declaration

may cover.  For instance, NSD offers only rote recitation that "there is no meaningfully segre-

gable information … that can be released."  Att. 3 ¶ 6.  The FBI relegates segregability to a foot-

note that likewise simply recites that information was "carefully re-examined" but no additional

---

[29]  The Court should do so even if (and perhaps because) it believes *in camera* review may
ultimately be warranted, though a proper *Vaughn* index must provide "information that is not
only specific enough to obviate the need for an *in camera* review, but that also enables the court
to review the … redactions."  *Halpern*, 181 F.3d at 294.

[30]  *E.g.*, *Mobil Oil Corp. v. Department of Energy*, 102 F.R.D. 1, 9 (N.D.N.Y. 1983) (citing
*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260-61 (D.C. Cir. 1977)).

reasonably segregable portions may be released.  Att. 5 ¶ 36 n.21.  Meanwhile, NSA, though it similarly claims "no meaningfully segregable information … can be released," at least notes that "a small amount of information … (section titles) … by themselves may be unclassified," but it quickly hedges – claiming that acknowledging as much assertedly would "reveal [ ] sensitive functions and activities [.]"  Att. 4 ¶ 15.

Each of these is no more than the kind of "blanket declaration that all facts are so inter-twined [as] to prevent disclosure" that courts have held are "not … sufficient explanation of non-segregability."  *EPIC v. DOJ*, 584 F. Supp. 2d at 74.  Neither the NSD's, FBI's, nor NSA's lip service to segregability (nor, of course, ODNI's silence) satisfy the segregability requirement for "*specific* facts which establish what [ ] documents are and what information they contain." *Bay Area Lawyers*, 818 F. Supp. at 1300.  Rather, they provide "so little information … that segre-gability is left to [ ] pure speculation."  *Id*. at 1298.  The Court should order the agencies to go back and disclose segregable non-exempt material in the records identified as responsive to Plaintiffs' FOIA request, or review *in camera* unexpurgated versions to determine what segre-gable, non-exempt material exists. [31]

## II.   INVOCATION OF EXEMPTIONS 1, 3, AND 7E IS ESPECIALLY IMPROPER FOR RECORDS DETAILING ABUSES OF THE FAA

Even in cases where Plaintiffs might hazard a guess at what some redacted material may entail, it appears the agencies' Exemption 1, 3, and 7E claims are overreaching. [32]  One key example involves nondisclosure of statistics and other information relating to abuses of the FAA

---

[31]  *See, e.g.*, *Islamic Shura Council of S. Cal. v. FBI*, 2011 WL 1576476 (C.D. Cal. Apr. 27, 2011) ("If … affidavits are 'too generalized' the FOIA authorizes the [ ] court to examine … agency records *in camera*" to confirm the records or parts thereof were properly withheld).

[32]  Obviously, this may be equally true of documents Defendants withheld in full, but with-out surrounding context and/or fuller descriptions, Plaintiffs cannot tell – or argue – as much.  In addition, failure in this Section to address a particular document and/or agency claim that Exemption 1, 3, or 7E applies is not intended to waive that argument in such cases.

through, *e.g.*, over-collection of U.S. persons' electronic communications.  The most apparent such withholding involves three reports by the AG and DNI on FAA compliance, ODNI 0001-0103, each of which notes "compliance incidents" with the FAA and contains lengthy but almost entirely redacted discussions of them.  *Id*. 0022-35, 0059-69, 0092-0103.  The reports state that compliance incidents are discussed "in detail" in separate "Section 707" reports, which were not produced in any form to Plaintiffs.  *See id*. 0021, 0025, 0032-33, 0059, 0067, 0091-92, 0095, 0100.  And each report includes a redacted chart presumably containing statistical information on FAA abuses, *id*. 0022, 0059, 0092, with two reports explicitly noting the existence of statistical information that was withheld from Plaintiffs.  *Id*. 0022-24, 0092-94.  Although unclassified portions of the reports do not describe the nature of the "compliance incidents," they appear to relate to the mistaken targeting or acquisition of U.S. persons' communications.  Similarly, in the unredacted portion of the 11 two-page transmittals for NSA's FAA § 702 assessment (NSA 1-22), *see supra* note 21, the passage concludes that there is "no reason to believe that any [NSA] intelligence activities … were unlawful."  *See, e.g.,* NSA 1-2.  Most of the rest of the document is missing, however, and other stray text in the letters suggests withholding of information regarding "incidents" and "mistakes" in the "collection, processing, and reporting of data."  *Id.*

Similarly, one document the FBI released in part, an *Annual Report required by Subsection 702(l)(3)* for September 1, 2008, through August 31, 2009 (FAA 11-13), includes redactions under the heading "Targets Later Determined to be Located in the U.S," *see* FAA 12, which are acquisitions that by definition lie outside the scope of FAA authority.  *See* 50 U.S.C. § 1881a(b).  This revelation is particularly troubling as the document further states, in an unredacted passage, that "the FBI did not develop any procedures to assess … the extent to which [ ] acquisitions … acquire communications of U.S. persons."  FAA 12.  This is both preceded and followed by large

redactions (the former under the heading "Procedures to Assess Extent of Acquisitions of U.S. Persons"), suggesting that the FBI, like the ODNI, withheld evidence of the number of U.S. persons whose communications were collected or intercepted, and the sufficiency of procedures to avoid same. *Id.  See also* FAA 656-707 (redactions raising similar concerns).  Plaintiffs can only surmise that the missing materials contain information upon which those references are based, that bear on the extent of over-collection of U.S. persons' communications during FAA surveillance.

Withholding this information from the public is improper.  As a threshold matter, ODNI invokes Exemptions 1 and 3 but does not explain how they apply, relying instead on other Defendants to do so.  *See supra* note 19.  Yet the FBI does not invoke Exemption 3, *see supra* note 23, and NSD discusses only Exemption 1 without even mentioning Exemption 3, though notations on its documents cite it.  *See supra* at 13 & n.15.  And although NSA discusses Exemption 3, of the three statutes it relies on, one is "unique to NSA," Att. 4 ¶ 27 (citing Pub. L. No. 86-36, 50 U.S.C. § 402 <u>note</u>), while another involves classified information, *id.* ¶ 28 (citing 18 U.S.C. § 798), which is also the purview of Exemption 1.  With regard to the last statute, 50 U.S.C. § 403-1(i)(1), all NSA does is describe it – without applying it at all.  *See id.* ¶ 29.

In any event, none of these FOIA Exemptions allow agencies to withhold statistics or other information reflecting FAA abuses like over-collection.  Insofar as, for instance, Exemption 3 authorizes (through, *e.g.*, 50 U.S.C. § 403-1(i)(1)) withholding intelligence "sources and methods," *see*, *e.g.*, Att. 4 ¶ 29, and to the extent the agencies' Exemption 1 claims likewise are based on intelligence activities, sources or methods, *see supra*; E.O. 13526 § 1.4(c), they would seem not to apply here.  The propriety of withholding in this respect turns initially on whether release of the details withheld would *disclose* such intelligence sources and methods, especially

21

to the extent that doing so could render them no longer useful.  *Larson v. Department of State*, 565 F.3d 857, 863 (D.C. Cir. 2009); *cf.*, Att. 4 ¶ 4.

But disclosing statistics of abuse reflecting how many U.S. persons and/or purely domestic communications were surveilled improperly would not undermine any authorized intelligence source or method.  Defendants' declarations certainly do not suggest, beyond vague and general allusions, how such harm might arise.  Nor, to the extent that information withheld may reflect FAA abuses, would there be any inherent harm to intelligence sources and methods.  Again, it is important not to lose sight of the fact that Plaintiffs expressly have eschewed seeking records or information that would reveal the targets (intended or collateral), content, or results of any intelligence-gathering, or that would reveal the means by which surveillance activities are carried out.  The fact that Plaintiffs are seeking primarily the *number* rather than the *nature* of the activities at issue precludes invoking Exemption 1 and 3 to avoid disclosure.

Similarly, the same is true, for example, of the FBI's broad invocation of Exemption 1 across well over 500 pages or portions thereof it seeks to shield in the name of national security. *See* Att. 5 ¶¶ 40-41.  It is difficult to see how disclosing numbers and reports reflecting over-collection of U.S. persons' communications reveals anything about lawful FAA targeting of non-U.S. persons that may be permissibly withheld as an intelligence method or activity, or as a specific intelligence priority or target.  This is particular so for the purely statistical information the government has withheld, which by itself cannot possibly reveal any intelligence method, activity, priority, or target.

Invoking Exemptions 1 and 3 also is improper to the extent the "intelligence sources and methods" sought to be protected must fall within the agencies' statutory authority and involve

lawful conduct. [33]   The authority to withhold information as an "intelligence activity," "source [or] method" is broad, but it is not unlimited.  *See Weissman*, *supra* at 2.  The seminal Supreme Court case interpreting the phrase "intelligence sources and methods" makes clear that an agency may withhold only information about sources or methods that "fall within the Agency's mandate."  *CIA v. Sims*, 471 U.S. 159, 169 (1985).  Here, the FAA expressly excludes acquisition of U.S. persons' communications, and Plaintiffs' FOIA request seeks only statistics and information pertaining to such abuse.  In addition, under Exemption 1, withholding is improper here. Information quantifying or reflecting instances where agencies have exceeded what the FAA allows cannot – by definition – be "specifically authorized under … an Executive order to be kept secret" or "properly classified."  *See* 5 U.S.C. § 552(b)(1).  Indeed, the Executive Order the agencies rely upon, E.O. 13526, [34]  specifically states that "[i]n no case shall information be classified, [or] continued to be maintained as classified … in order to conceal violations of law … or administrative error." [35]

---

[33]   The scope of protected sources and methods under Exemptions 1 and 3 is identical.  *See, e.g.*, *Maynard v. CIA*, 986 F.2d 547, 555 (1st Cir. 1993); *Military Audit Project v. Casey*, 656 F.2d 724, 736 n.39 (D.C. Cir. 1981) (noting Exemption 3's protection overlaps with Exemption 1 where disclosing classified information could reveal intelligence sources/methods).

[34]   *See* Att. 2 ¶¶ 23; Att. 3 ¶¶ 8, 10, 12, 14, 16, 18; Att. 4 ¶¶ 20-25; Att. 5 ¶¶ 34-38, 46 (all discussing Executive Order 13526).

[35]   E.O. 13526 § 1.7(a), 75 Fed. Reg. at 710.  *See also Freedom of Information Act*, Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683 (2009) ("A democracy requires accountability, and accountability requires transparency.  * * * *  The [FOIA] should be administered with a clear presumption:  In the face of doubt, openness prevails.  The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, [or] because errors and failures might be revealed ….").

Significantly, the substantive basis for classification the FBI cites, E.O. 13526 §§ 3.3(b)(1) and (b)(6), *see* Att. 5 ¶¶ 37-38, is particularly curious.  Those provisions address "classified records … more than 25 years old."  *See* E.O. 13526 § 3.3(a), 75 Fed. Reg. at 714.  Yet Plaintiffs' FOIA request deals solely with the FAA, a statute enacted in 2008, and is limited to records created since July 10 of that year.  *See* Compl. at 3-4.

Similarly, there are redactions under Exemption 7E's allowance for withholdings relating to investigative procedures and techniques, *e.g.*, Att. 5 ¶¶ 32 (chart), 69-70, where the context of what is disclosed suggests the absence of any "rational nexus between [an] investigation and one of the agency's law enforcement duties" or a "specific law enforcement purpose." *Campbell v. DOJ*, 193 F. Supp. 2d at 38. The agencies have the burden to describe the general nature of the technique or procedure at issue, *see*, *e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004), but the amorphous context of the non-redacted material and the agencies' brief discussions of Exemption 7E cannot satisfy that obligation. For example, FAA 543, which appears to be part of a flip-book or slide deck, shows several bullet points defining "US Person" for purposes of FAA over-collection, followed by a blank box redacted under Exemption 7E (and Exemption 1). This provides no insight whatsoever into whether or how what follows relates to law enforcement techniques (or classified information under E.O. 13526 § 3.3, for that matter). In addition, an agency cannot properly invoke Exemption 7 where it is statutorily barred from engaging in a given law enforcement activity. *Weissman*, 565 F.2d at 695-96. Again, insofar as withheld information quantifies or describes over-collection not authorized by the FAA, or the lack of procedures and policies necessary to prevent it, this limitation renders improper the Defendants' attempts to invoke Exemption 7E to deny access.

## III.   EXEMPTION 5 CLAIMS RUN COUNTER TO THE PARTIES' STIPULATION

The FBI's invocation of FOIA Exemption 5 to withhold parts of a number of documents under the deliberative process privilege is at odds with the parties' Stipulation. Att. 5 ¶¶ 50-52 & n.25. As the FBI notes, for the deliberative process privilege to apply under Exemption 5, withheld material must be both "predecisional" in that it is "antecedent to [ ] adoption of agency policy," as well as "deliberative." *Id*. ¶ 52. But the parties' Stipulation expressly specifies that Plaintiffs' FOIA request seeks only "statements of final agency policy" and "final documents."

Stip. (Dkt. 12) ¶¶ 6-8.  Because the FBI's claims of exemption are so vague, *see supra* Point I, it is hard to tell whether the "draft documents and e-mail trails and exchanges" to which the FBI seeks to apply Exemption 5 are "final."  To the extent such material comprises legal memoranda, procedures, directives, practices, guidance and/or guidelines that constitute final agency policy, they are by definition not "pre-decisional" and thus not subject to withholding under Exemption 5's deliberative process privilege.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully urge the Court to grant summary judgment holding that the NSD, NSA, ODNI and FBI have failed to carry their burden of justifying their withholding and redactions of documents responsive to the Plaintiffs' FOIA request.  In the alternative, the Court should issue an order that requires the agencies to produce for documents that remain in dispute a much more specific *Vaughn* index that adequately describes what documents are, and that explains how any claimed Exemption may apply, and should further order Defendants to disclose information relating to abuses of the FAA. [36]

---

[36]  And where necessary, the Court should review the withheld and redacted records *in camera* to determine whether and to what extent the agencies properly invoke FOIA Exemptions 1, 3 and 7E, and whether segregable parts of withheld and/or redacted material may be released.

Dated:  New York, New York
        June 3, 2011

                                     Respectfully submitted,

                                     DAVIS WRIGHT TREMAINE LLP

                                     By:_____s/  Robert D. Balin_____
                                          Robert D. Balin (-5847)
                                          Ronald G. London

                                     1633 Broadway, 27th Floor
                                     New York, NY 10019
                                     (212) 489-8230
                                     robertbalin@dwt.com

                                     - and -

                                     AMERICAN CIVIL LIBERTIES
                                     UNION FOUNDATION

                                     By:_____Jameel Jaffer_____
                                          Jameel Jaffer
                                          Alexander Abdo

                                     125 Broad Street, 18th Floor
                                     New York, New York 10004
                                     Phone: 212-549-2500
                                     Fax: 212-549-2654

                                     *Co-counsel for Plaintiffs*