UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION, *et al.*,

Plaintiffs,

-v-

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, *et al.*,

Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/2012

No. 10 Civ. 4419 (RJS)
MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiffs bring this Freedom of Information Act ("FOIA") suit seeking disclosure and expedited processing of records relating to federal agencies' interpretation and implementation of the FISA Amendments Act of 2008 ("FAA"). Before the Court are the parties' cross-motions for summary judgment. By Opinion and Order dated November 15, 2011 (the "November 15 Opinion"), the Court denied Plaintiffs' motion to strike classified declarations, granted in part Plaintiffs' motion for *in camera* review, and kept open the parties' cross-motions for summary judgment pending additional submissions from Defendants. *ACLU v. Office of the Dir. of Nat'l Intelligence*, No. 10 Civ. 4419 (RJS), 2011 WL 5563520 (S.D.N.Y. Nov. 15, 2011).

On January 25, 2012, the Court received the following classified submissions from Defendants for *in camera, ex parte* review: (1) a Supplemental Declaration from Diane M. Janosek, Deputy Associate Director for Policy and Records for the National Security Agency ("NSA"), dated January 13, 2012 ("Supplemental Janosek Declaration"); (2) a Supplemental Declaration from Mark A. Bradley, Director of the FOIA Declassification Unit of the Office of Law and Policy in the National Security Division ("NSD") of the United States Department of

Justice, dated January 25, 2012 ("Supplemental Bradley Declaration"); (3) Exhibit A to the Second Declaration from David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation ("FBI"), dated January 25, 2012; and (4) a Supplemental Declaration from an undisclosed declarant ("Supplemental Classified Declaration"), dated January 20, 2012. Additionally, the Court is in receipt of the following unclassified, publicly filed submissions: (1) a Supplemental Declaration from John F. Hackett, Director of Information Management for the Office of the Director of National Intelligence ("ODNI"), dated January 24, 2012 ("Supplemental Hackett Declaration") (Doc. No. 48); and (2) a Second Declaration from David M. Hardy, dated January 25, 2012 ("Second Hardy Declaration") (Doc. No. 51), which is unclassified with the removal of Exhibit A.

Having conducted a careful review of Defendants' additional submissions, the Court concludes that Defendants have demonstrated that the withheld materials responsive to Plaintiffs' requests fall within the claimed FOIA exemptions. Accordingly, for the reasons that follow, Defendants' motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied.

I. BACKGROUND[1]

This action arises from Plaintiffs' FOIA requests for records relating to the government's interpretation and implementation of the FAA. Specifically, at issue in this case are Defendants' claimed withholdings and redactions of materials pursuant to FOIA Exemptions 1, 3, and 7(E).[2]

---

[1] The Court assumes the parties' familiarity with the facts of this case, as well as the applicable legal standard, as outlined the November 15 Opinion. *See ACLU*, 2011 WL 5563520. Accordingly, the Court provides only a brief summary of each in this opinion.

[2] Defendants also withheld or redacted materials pursuant to Exemptions 2, 4, 6, 7(C), and 7(D). Plaintiffs do not contest these withholdings. (Pls.' Mem. 9 n.16.)

2

A. The November 15, 2011 Opinion

In the November 15 Opinion, after conducting a *de novo* review of agency affidavits with respect to FOIA Exemptions 1, 3, and 7(E), the Court determined that much of the justification put forth for redacting or withholding materials was conclusory, with Defendants making little effort to apply the relevant exemptions to the withheld documents.[3] *ACLU*, 2011 WL 5563520, at *4-11. Importantly, with respect to Plaintiffs' request for, and Defendants' withholding of, statistical and other information regarding overcollection under the FAA, the Court concluded that Defendants "fail[ed] to demonstrate that the withheld statistical information 'logically falls within the claimed exemption[s].'" *Id.* at *8 (quoting *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009)). Because Plaintiffs' FOIA requests are concerned primarily with alleged *abuse* of the FAA, the Court reiterates that government agencies are *not* permitted to classify information in order to "conceal violations of law, inefficiency, or administrative error" or to "prevent embarrassment." Exec. Order No. 13,526 § 1.7(a)(1)-(2).

Despite its finding that Defendants' submissions were inadequate, however, the Court denied Plaintiffs' request for full *in camera* review of the agency records withheld by Defendants. Instead, the Court directed Defendants to submit for *in camera* review *Vaughn* indices and, if necessary, additional *Vaughn* affidavits providing further justification for Defendants' withholdings.[4] The Court noted that the goal of the supplemental submissions was

---

[3] The Court found, however, that the FBI had met its burden with respect to the withholding of FBI case file numbers. *ACLU*, 2011 WL 5563520, at *10-11.

[4] In *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the D.C. Circuit held that an agency could meet its burden in FOIA litigation by submitting documentation that provides "'a relatively detailed analysis [of the withheld material] in manageable segments' without resort to 'conclusory and generalized allegations of exemptions,'" and "'an indexing system [that] would subdivide the [withheld] document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification." *Halpern v. FBI*, 181 F.3d 279, 290 (2d Cir. 1999) (quoting *Vaughn*, 484 F.2d at 826-27) (alterations in original). However, the Second Circuit has "eschewed rigid adherence to any particular indexing format under the *Vaughn* standard, opting instead for a functional approach." *Id.* at 291.

3

to "'forc[e] the government to analyze carefully any material withheld' and 'enabl[e] the [Court] to fulfill its duty of ruling on the applicability'" of the claimed exemptions. *ACLU*, 2011 WL 5563520, at *13 (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)). Accordingly, the Court clarified that any additional *Vaughn* affidavits should "include 'a relatively detailed analysis [of the withheld material] in manageable segments' without resort to 'conclusory and generalized allegations of exemptions.'" *Id.* (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)) (alteration in original).

## B. Defendants' Subsequent Submissions

The Second Hardy Declaration, which is unclassified but accompanied by a classified Exhibit A, describes the bases for the FBI's withholdings pursuant to FOIA Exemptions 1 and 7(E), which are set forth with more detail in Exhibit A. Hardy avers that certain materials were withheld pursuant to Exemption 1 because they reveal "intelligence sources and methods," which pursuant to Executive Order No. 13,526, Section 1.4(c) cannot be disclosed. (Second Hardy Decl. ¶ 8.) Specifically, Hardy asserts that disclosure could damage national security by revealing: (1) intelligence activities; (2) "criteria used for – and priorities assigned to – current intelligence or counterintelligence investigations"; (3) certifications authorized by the Foreign Intelligence Surveillance Court; and (4) "targeting specifications, national security operation coordination, electronic surveillance acquisition and dissemination pathways, and intelligence retention and security procedures." (*Id.*) According to Hardy, revealing this material could enable adversaries to acquire intelligence data or develop countermeasures to intelligence collection efforts. (*Id.*) With respect to Exemption 7(E), Hardy asserts that Plaintiffs seek information detailing "procedures and guidelines concerning the targeting and collection, inter-

agency coordination, retention, search and analysis, dissemination, and purging of intelligence collected pursuant to FAA 702." (*Id.* ¶ 10.)

Because the remaining materials are classified, the Court cannot describe their content in other than the most general of terms. However, in the interest of providing as much information as possible regarding the basis of the Court's decision, the Court will outline the nature of the submissions. The Supplemental Janosek Declaration is 30 pages in length and contains descriptions of the NSA's justifications for its withholdings, and attaches a 12-page *Vaughn* index. The Supplemental Bradley Declaration is 42 pages, providing for each category of withheld materials a written description of the grounds for its withholdings and a *Vaughn* index. Exhibit A to the Second Hardy Declaration is a 63-page *Vaughn* index that provides a detailed description of, and individual justifications for, each of the FBI's withholdings and redactions. The Supplemental Classified Declaration from the undisclosed declarant is 19 pages and contains a written description of the grounds for withholdings.[5]

## II. DISCUSSION

Summary judgment is appropriate in a FOIA case where affidavits submitted by the defending agency "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Wilner*, 592 F.3d at 73. "Recognizing the relative competencies of the executive and judiciary, . . . it is bad law and bad policy to 'second-guess the predictive judgments made by the

---

[5] The Supplemental Hackett Declaration, which is unclassified, explains that, of the six documents that the ODNI processed, three were semi-annual assessments and three were ODNI cover letters. Specifically, the semi-annual assessments were prepared in cooperation with the Department of Justice. However, the ODNI is "not the classification authority over the information in the semi[-]annual report" and thus defers to other agencies for "[d]etailed justifications for these withholdings" in their classified submissions. (Supp. Hackett Decl. ¶¶ 9-10.) As set forth below, the Court finds that Defendants adequately justified these withholdings in other submissions. In addition, redactions to the ODNI cover letters were made pursuant to FOIA exemptions 2 and 6, which Plaintiffs do not challenge. (*Id.* ¶ 11; Pls.' Mem. 9 n.16.)

5

government's intelligence agencies' regarding questions such as whether disclosure of terrorist-related surveillance records would pose a threat to national security." *Id.* at 76 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)). However, although courts are constrained to accord "substantial deference to agency affidavits that implicate national security," *Associated Press v. Dep't of Def.*, 498 F. Supp. 2d 707, 710 (S.D.N.Y. 2007) (internal quotation marks and citations omitted), the Court must nonetheless conduct thorough *de novo* review of the affidavits and indices submitted by Defendants and resolve all doubts in favor of disclosure. *Halpern v. FBI*, 181 F.3d 279, 287 (2d Cir. 1999).

### A. Exemption 1

Pursuant to FOIA Exemption 1, an agency may withhold records that are: "(A) specifically authorized under criteria established by an Executive [O]rder to be kept secret in the interest of national defense . . . and (B) are in fact properly classified pursuant to such Executive [O]rder." 5 U.S.C. § 552(b)(1). As set forth in their publicly filed, unclassified affidavits, Defendants invoked sections 1.4(b), (c), and (g) of Executive Order 13,526. The applicable sections permit classification of "foreign government information," Exec. Order No. 13,526 § 1.4(b); "intelligence activities (including covert action), intelligence sources or methods, or cryptology," *id.* § 1.4(c); and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security," *id.* § 1.4(g).

The Court finds that, in contrast to their initial submissions, Defendants' classified *Vaughn* affidavits and indices "adequately describe the [c]lassified [d]ocuments withheld by the [government] for the Court to determine that those documents fall within one or more of [the categories identified by the agency], and are properly withheld." *N.Y. Times Co. v. Dep't of Def.*,

499 F. Supp. 2d 501, 512 (S.D.N.Y. 2007).[6] The submissions further describe "the impact upon intelligence sources and methods" that disclosure of documents withheld pursuant to Exemption 1 "could reasonably be expected to have." *Rubin v. CIA*, No. 01 Civ. 2274 (DLC), 2001 WL 1537706, at *4 (S.D.N.Y. Dec. 3, 2001). Although the submissions occasionally resort to conclusory assertions and boilerplate, such as when the FBI repeatedly asserts that disclosure of certain documents would enable enemies to "seek out and intimidate personnel" with no explanation as to how this could be the case (Second Hardy Decl., Ex. A, at 37), the submissions ultimately provide adequate justification for each of Defendants' withholdings and redactions pursuant to Exemption 1.

As noted above, the Court's November 15 Opinion found that Defendants' previous submissions were insufficient with respect to Plaintiffs' requests for information concerning overcollection under the FAA. To be sure, some of the reasons put forth in Defendants' latest classified submissions remain unconvincing. For example, ███████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████; presumably, the public is already aware that the government is highly accurate and effective in its collection under Section 702. Nevertheless, the Court finds persuasive Defendants' explanation that any responsive information that it has withheld, particularly *in combination with information that the government has already made public*, would reveal potentially damaging information regarding the scope of the government's

---

[6] The Court notes that of all of Defendants' recent submissions, Exhibit A to the Second Hardy Declaration is, with a few exceptions, exemplary in terms of providing descriptions of the materials withheld and the specific grounds for doing so, thus allowing the Court to conduct effective *de novo* review of the grounds for the FBI's withholdings.

intelligence activities. Likewise, any information regarding particular instances of noncompliance is inextricably commingled with details of intelligence activities and methods and, thus, properly withheld pursuant to Exemption 1. Perhaps most importantly, the Court is persuaded that the redactions and withholdings of statistical information are not motivated by a desire to avoid embarrassment or to conceal violations of law, which, as noted above, are impermissible bases for withholding records under FOIA.

Because Defendants have supplied *Vaughn* affidavits and indices containing "reasonable specificity of detail as to demonstrate that the withheld information logically falls within" Exemption 1, it would be inappropriate for the Court to proceed to "evaluate whether [it] agrees with the agency's opinions." *Wilner*, 592 F.3d at 76 (quoting *Larson*, 565 F.3d at 865). Accordingly, the Court finds that Defendants have met their burden of establishing that responsive documents fall within Exemption 1.

B. Exemption 3

Exemption 3 permits withholding where: "(1) the statute invoked qualifies as an [E]xemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope." *A. Michael's Piano Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 143 (2d Cir. 1994). Specifically, as set forth in their publicly filed materials, both the ODNI and the NSA invoke the National Security Act of 1947, which states that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). The NSA also invokes the National Security Agency Act of 1959, which provides that "nothing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, [or] of any information with respect to the activities thereof," Pub. L. No. 86–36, § 6(a), 73 Stat. 63, 64 (codified at 50 U.S.C.

§ 402 note), and 18 U.S.C. § 798, which prohibits unauthorized disclosure of classified communications "concerning the communication intelligence activities of the United States or any foreign government."

Defendants' initial submissions provided only conclusory justifications under Exemption 3, failing to connect the relevant statutory exemptions with the nature of Plaintiffs' request, which sought not specific communications and interceptions but largely statistical information relating to overcollection and abuse. *ACLU*, 2011 WL 5563520, at *9-10. In contrast, Defendants' classified submissions provide detailed descriptions of responsive materials that have been withheld, including documents responsive to Plaintiffs' statistical requests, and Defendants adequately explain why the withheld materials reveal "intelligence sources or methods," the activities of the NSA, and "communications intelligence activities" of the United States government. Accordingly, the Court finds that Defendants have met their burden of establishing that responsive documents are properly withheld pursuant to Exemption 3.

C. Exemption 7(E)

Finally, Exemption 7(E) allows the government to withhold materials that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

In its prior decision, the Court determined that, with respect to Exemption 7(E), the first Hardy Declaration offered little more than a vague description of the withheld documents and "a generic assertion that disclosure 'could enable targets . . . to avoid detection or develop countermeasures to circumvent' law enforcement efforts." *ACLU*, 2011 WL 5563520, at *11 (citing Decl. of Robert D. Balin, dated June 3, 2011, Doc. No. 34, Ex. 13 ¶ 69). In contrast, the

classified Exhibit A to the Second Hardy Declaration provides extensive detail regarding the nature of the "internal e-mails, training slides, legal opinions and interpretations of techniques, Standard Operating Procedures, electronic communications concerning investigations, case write-ups, and miscellaneous reports" identified in the FBI's previous submission. *Id.* Again, although not all of the rationales put forth are convincing, the Court finds that Defendants have met their burden of establishing that responsive materials, if released, could threaten law enforcement efforts and are therefore properly withheld pursuant to Exemption 7(E).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is HEREBY DENIED, and Defendants' motion for summary judgment is HEREBY GRANTED. The Clerk of the Court is respectfully directed to terminate the motions located at Doc. Nos. 31 and 35 and close this case.

SO ORDERED.

DATED:   March 30, 2012
         New York, New York

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　RICHARD J. SULLIVAN
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE